NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.T., T.T., N.G., N.G., and L.G.

No. 1 CA-JV 22-0284
FILED 8-08-2023

---

Appeal from the Superior Court in Maricopa County
Nos. JD34010
JS20762
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED**

---

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant Cristina M.*

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant Isaac G.*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

Thomas Vierling Attorney at Law, Phoenix
By Thomas A. Vierling
*Counsel for Appellees J.T., N.G., T.T., N.G., and L.G.*

_____

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

_____

**P A T O N**, Judge:

¶1        Cristina M. ("Mother") and Isaac G. ("Father") appeal from the superior court's order terminating their parental rights.  We affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Mother is the biological parent of the five children who are parties to this appeal, the youngest three of which are also Father's biological children.  Two of Father's children who are parties to this appeal have special needs requiring, among other things, immunology therapy and feeding therapy.

¶3        The Department of Child Safety ("DCS") took custody of the four oldest children in July 2018 and petitioned for dependency as to Mother on allegations of substance abuse, neglect, and failure to treat her mental health.  As to Father, DCS petitioned for dependency on allegations of neglect and substance abuse.  DCS took custody of the fifth child one month after her birth and petitioned for her dependency as to both parents on the same respective allegations.  The superior court adjudicated all five children dependent as to Mother and the younger three as to Father.

¶4        About a year later, in September 2020, the children's guardian ad litem petitioned to terminate Mother's and Father's parental rights based on fifteen months' out-of-home placement grounds.  The parents contested the termination petition.  The superior court denied the petition in July 2021 based on its finding that DCS failed to provide services to the parents that accounted for their intellectual disabilities.

¶5        In March 2022, the children's guardian ad litem again moved to terminate the parents' parental rights alleging grounds of substance abuse for Mother and fifteen months' out-of-home placement for both parents.  The superior court granted the motion in December 2022, and found the substance-abuse statutory termination ground as to Mother and out-of-home placement ground as to both parents proven by clear and convincing evidence and that termination was in the children's best

interests. Mother and Father timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶6**    In order to grant a motion to terminate parental rights, the superior court must find (1) by clear and convincing evidence that at least one statutory ground for termination exists and (2) by a preponderance of the evidence that termination is in the children's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018); *see also* A.R.S. § 8-533(B) (listing grounds for termination). As the trier of fact, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Accordingly, we affirm the superior court's factual findings if supported by reasonable evidence. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93–94, ¶ 4 (App. 2009).

## I.    Termination of Mother's Parental Rights

**¶7**    Mother argues that the superior court violated her constitutional right to parent by denying her a fair opportunity to participate in the three specific reunification services it directed DCS to provide when it denied the petition to terminate her parental rights in 2021. She also contends that the superior court failed to make findings of fact that termination of her parental rights would be in the children's best interests.

### A.    Reasonable evidence supports the superior court's finding that DCS provided reasonable reunification services to Mother.

**¶8**    Termination based on the substance abuse ground requires a finding that DCS made reasonable efforts to reunify the family. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005). DCS must provide the time and opportunity for parents to participate in programs directed toward reunification but need not provide every conceivable service. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37 (App. 1999). Nor must DCS ensure parent participation in provided services, *Maricopa Cnty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994), or leave the remediation window open indefinitely, *see Maricopa Cnty. Juvenile Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

**¶9**        As previously mentioned, the superior court denied the first termination petition because it found that DCS needed to engage service providers who were aware of, trained to deal with, and able to adapt treatment to the parents' intellectual limitations.  Specifically, for Mother, this included a new psychological evaluation, a master's level therapist to provide trauma therapy if the previous doctor who treated her was unable to provide her trauma therapy, and a new Nurturing Parenting Program (NPP) parent aide referral.  Mother now contends that she did not have a fair opportunity to participate in these three specific services.

**¶10**        We first note that in the fifteen months between the court's July 2021 termination petition denial and the October 2022 termination hearing that is the subject of this appeal, Mother participated in periodic Report and Review Hearings and pretrial conferences.  As the superior court noted in its termination order, Mother did not object to the adequacy of services at these proceedings.  Although we could find Mother waived any objection to the adequacy of services by raising it for the first time on appeal, *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 19 (App. 2013), we choose not to and instead conclude that the record supports the superior court's finding that DCS provided Mother reasonable reunification services.

**¶11**        Mother challenges the reasonableness of the three services the court identified in its 2021 termination order, arguing they are the only services that matter because they "actually would reunify [her] with her child."  But aside from that conclusory statement, she offers no argument as to why *only* these services mattered, or how the superior court's findings related to these three services were insufficient, other than stating her participation was hampered by DCS's delay.  But, as discussed below, the record shows she delayed and/or failed to meaningfully participate in these and other numerous services DCS offered.  She also offers no legal authority or argument as to why, as a matter of law, we should only consider the reasonableness of these services and disregard the numerous reunification services Mother was offered and declined to meaningfully participate in.

**¶12**        The same superior court judge who directed DCS to provide the three services Mother now challenges concluded that in the fifteen months between the two termination hearings, DCS made the requisite efforts towards family reunification and that Mother had adequate time and opportunity to participate in reunification services. Specifically, the court found that "[t]he issues of not addressing the parents' borderline intellectual capacities have been remedied since June 2021 and the Court

finds DCS made reasonable efforts to provide services designed to reunify the family, but the parents have not made necessary behavioral changes which puts the Children at risk."

**¶13** The court made extensive findings as to the reunification services DCS provided to Mother between the termination hearings and the extent of her participation or lack of participation in each one. These services included substance abuse testing and treatment, visitation assistance, regular "Child and Family Team" meetings, and Families Connect.

**¶14** Further, the record shows that Mother did not seriously engage with a first therapy provider, was dropped from a second provider after a month and a half of non-attendance, and ultimately received three months of counseling from a therapist referred by a master's-level intake counselor who knew of Mother's need for trauma counseling. The court noted that Mother's NPP provider was made aware of her diagnoses but Mother was closed out of that service due to non-participation. Specifically, the record showed that Mother refused to engage with the NPP aide over five months of repeated DCS referrals and attempts by the provider to accommodate Mother's reported illnesses she claimed prevented her from keeping appointments. Although DCS delayed referring Mother for an updated psychological examination until April 2022, Mother then delayed the evaluation for almost two more months by failing to attend her appointments. Mother rarely attended regularly scheduled Child and Family Team meetings where her children's special needs were discussed, and she tested positive for methamphetamine in January 2022 and February 2022. She participated only sporadically in mandated drug testing and had large gaps between completed tests during the five months before the October 2022 trial. Accordingly, we find that reasonable evidence supported the superior court's findings that DCS provided reasonable reunification services to Mother. *See Denise R.*, 221 Ariz. at 93–94, ¶ 4.

**¶15** We affirm the court's termination on the substance abuse ground, and therefore decline to analyze Mother's arguments regarding the out-of-home placement ground. *See* A.R.S. § 8-533(B) (To justify termination, a court need only find "any one" of the listed grounds exists.); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

**B.** **Reasonable evidence supports the superior court's finding that termination of Mother's parental rights was in the children's best interests.**

**¶16** Termination is in a child's best interests if the child would either benefit from the termination or be harmed by the continuing parent-child relationship. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016) (citation omitted). The superior court may consider a child's adoptability as part of its best-interests analysis. *Alma S.*, 245 Ariz. at 150–151, ¶ 13. Although the court must consider the totality of the circumstances, "prospective adoption is a benefit that can support a best-interests finding" in a termination case. *Id.* (quoting *Demetrius L.*, 239 Ariz. at 4, ¶ 16). Indeed, termination may be in a child's best interests when the child's placement is meeting the child's needs and the child's adoption is otherwise legally possible and likely. *Id.* at 151, ¶ 14 (quoting *Demetrius L.*, 239 Ariz. at 151, ¶ 14).

**¶17** The court heard testimony that the children were in adoptive placements that met their needs and were otherwise adoptable. One of the prospective adoptive parents testified that she and the other children's prospective adoptive parents are "a unit" who work together to make sure the five children can spend time together. Conversely, the DCS case manager testified that Mother could not safely parent during visitation and required a second case aide to ensure the children's safety. Mother also repeatedly failed to bring L.G.'s necessary foods to visits, which led to L.G. not eating for several hours, including during dinnertime. Reasonable evidence thus supports the superior court's finding that termination was in the children's best interests because their adoptive placements were meeting their needs and Mother could not safely parent the children and placed them at risk.

## II. Termination of Father's Parental Rights

**¶18** The fifteen months' out-of-home placement ground requires clear and convincing evidence that (1) the child has been in court-ordered out-of-home placement for at least a cumulative fifteen months, (2) DCS has made a "diligent effort to provide reunification services," (3) the parent has been unable to remedy the circumstances that cause the child to be in the placement, and (4) there is substantial likelihood that the parent will be incapable of proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(8) (element 2) and 8-533(B)(8)(c) (elements 1, 3, and 4).

**¶19** Father challenges the sufficiency of evidence supporting the superior court's findings as to elements (3) and (4) above. "[C]ircumstances that cause the child to be in an out-of-home placement" refers to the circumstances existing at the time of termination. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 99 n.14 (App. 2009). The superior court found that at the time of termination, neither parent could safely parent the children and that the children would be at risk of not receiving necessary medical and mental care, not being kept safe under parental control, and—in one child's case—not receiving adequate food for an eating condition that requires feeding therapy.

**¶20** The superior court noted that one child has a genetic condition that requires substantial medical attention and that Father missed the majority of that child's medical appointments. The child's placement testified that Father attended only six of forty immunology injection appointments. Father's only testimony describing one child's complex medical condition related to an effect on the child's eyes. As to the other child's eating condition, Father testified that he received and understood the list of the child's preferred foods, but the case manager testified that for most of the visits that included dinner, neither parent brought foods from the list. The court heard testimony that the parents could not safely handle their children without help and required an additional case aide to assist during visits.

**¶21** Father cites evidence of his ability to parent his youngest child (who is not a party to this appeal) to support his argument that the superior court failed to consider Father's progress in parenting after he received the correct services. But Father's ability to parent a child without significant medical issues is of limited, if any, relevance in evaluating his ability to parent his children who have significant medical needs. *See Maricopa Cnty. Juvenile Action Nos. JS-5209 and JS-4963*, 143 Ariz. 178, 186–87 (App. 1984) ("[T]he fact that appellant is able to minimally act as an adequate parent for one child does not mean that she would be able to care for the other four children."). Regardless, we do not reweigh the evidence on appeal. *See Alma S.*, 245 Ariz. at 151, ¶ 18. Reasonable evidence supported the superior court's findings that Father was unable to remedy the circumstances causing his children to be placed outside the home and that a substantial likelihood existed that he would be incapable of proper and effective care and control in the near future.

## CONCLUSION

¶22      We affirm.

